UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KATHERINE NETZINGER,

    Plaintiff,

  v.

THE NATIONAL RAILROAD PASSENGER
CORPORATION,

    Defendant.

No. 16 CV 5116

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Katherine Netzinger worked as a station manager for defendant The National Railroad Passenger Corporation (more commonly known as Amtrak). After Netzinger shipped boxes on an Amtrak train without paying—which employees are only permitted to do if the shipment is for business purposes—Amtrak terminated her employment. Netzinger brought this suit alleging that her termination constituted unlawful age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* Amtrak moves for summary judgment, and for the following reasons, its motion is granted.

**I.    Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The

party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See King v. Ford Motor Co.*, 872 F.3d 833, 837 (7th Cir. 2017).

## II. Background

Netzinger first worked for Amtrak from 1978 through 1995, when she left voluntarily.[1] [45] ¶ 3.[2] In 2007, when Netzinger was 54 years old, Amtrak recruited her to come back as a station manager. *Id.* ¶ 4. Netzinger accepted and was rehired in January 2008. *Id.* ¶ 5. Five years later, Amtrak underwent a national reorganization, eliminating certain positions in the process. *Id.* ¶ 7. Around that time, Netzinger was placed in a newly created administrative station-manager position. *Id.* ¶ 8. In that role, Netzinger sometimes performed her old station-manager duties in addition to her new administrative duties. *Id.* ¶ 9.[3] Her title was later changed to station manager II. *Id.* ¶ 8.

---

[1] Netzinger purports to deny this assertion, but her response does not comport with Local Rule 56.1. She offers additional information and does not refute the assertions in Amtrak's statement. As a result, the statement is deemed admitted.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. The facts are largely taken from plaintiff's response to defendant's LR 56.1 statement of facts, [45], and defendant's response to plaintiff's LR 56.1 statement of additional facts, [48], where the asserted fact and accompanying response are set forth in the same document.

[3] In her deposition Netzinger stated, "none of my duties fell off. I worked two full-time positions for about two and a half years," and that "when the other managers had vacation time or training situations or they needed time off for whatever reason, I was the person to cover those shifts. So while I worked the administrator position, I may work a week a month to cover some other shifts." [43-1] at 48:12–13, 49:14–19. In her declaration,

In April 2014, Benjamin Sheets became the Superintendent of Long Distance Trains at the Chicago station and Netzinger's manager. *Id*. ¶¶ 11–12. Sheets also supervised other station managers, including Mildred Stalling, Donald Harris, Jonathan Slemons,[4] and Cynthia Rogers (a ticket office station manager). *Id*. ¶ 6. All five station managers who worked under Sheets were over 40 years old. *Id*. ¶¶ 4, 35–38.

When Netzinger was rehired as a station manager in 2008, her starting salary was $61,400. *Id*. ¶ 33. Throughout her employment she received several merit increases, including a 4% increase in September 2014, while she worked under Sheets. *Id*. Her ending salary was $71,882, which was 92.2% of the midpoint salary for station manager II positions nationwide. *Id*. ¶¶ 33, 40. Two other station managers received similar or lower salaries. When Stalling became a station manager in 2012 her salary was $70,000, and she received a 2.5% merit increase in 2014. *Id*. ¶ 35. Slemons was never paid more than Netzinger. *Id*. ¶ 36. Two station managers who had previously been employed in higher paying positions retained their salaries when they became station managers. Rogers made around $101,000 and Harris earned $79,000. *Id*. ¶¶ 37–38.

Sheets set goals that went above Amtrak's national requirements, and those goals affected the workloads of the station managers working for him. *Id*. ¶ 57. Netzinger's workload increased under Sheets. *Id*. ¶ 55. Before Sheets took over,

---

however, Netzinger said she worked both the station manager and station manager administrator positions, but never both at the same time. [45-2] ¶ 5.

[4] Amtrak's spelling of "Slemons" is inconsistent and it sometimes uses "Slemmons."

3

Netzinger had been taken out of the rotation for floor operations to give her time accomplish her administrative tasks, but Sheets put her back on the regular station manager rotation to make up for a recently eliminated station-manager position. *Id*. ¶¶ 9, 55–56. Given that she held the highest position in the station, Netzinger was assigned more duties than the other station managers and worked around 75 hours a week while when she was a station manager II. *Id*. ¶¶ 58–59. Sheets formally assigned some of Netzinger's administrative duties to other station managers, but there was never enough time for Netzinger to train them. *Id*. ¶ 63. Sheets occasionally took over projects for other station managers to do them himself, but he never took over any of Netzinger's projects. *Id*. ¶ 64; [43-1] at 267:4–270:22.

On at least one occasion, Sheets sent out a list of projects to the station managers and asked them to rank their preferences, and he did not assign Netzinger her preferred projects. *See id*. ¶¶ 60–62. Sheets put Netzinger on a performance improvement plan, which identified goals and areas for improvement. *Id*. ¶ 45. Some of the goals identified in her plan were things all station managers were expected to complete. *Id*. ¶ 48.[5] Sheets also put Stalling, the youngest station manager, on a performance improvement plan—though Stalling was allowed to apply for other positions while she was on her plan, and Netzinger was not. *Id*. ¶¶ 46, 53. In her 2014 performance evaluation Sheets wrote, "Kathy is the expert in claims, grievance, discipline and attendance." [48] ¶ 74.

---

[5] Netzinger purports to deny this assertion but refutes it only as to one particular goal for one station manager, and so she admits that Sheets expected all station managers to complete other common goals.

4

Netzinger complained about her workload to Sheets sometime around March 2015, to which he told her she must be "getting too old for the workload" and that she would have to take work home or work longer hours if she could not keep up. [45] ¶ 65; [48] ¶ 72.[6] In a separate incident, when discussing the possibility of creating a pool of temporary station managers, Sheets said he did not want any "old timers" and that he only wanted younger candidates. [45] ¶ 66. In another meeting about a new iPad program, Sheets again said that he only wanted younger employees to be involved. [48] ¶ 71. In July 2015, Netzinger wrote a letter to the Senior EEO Compliance Specialist complaining about a hostile work environment and alleging that Sheets had violated FMLA and discriminated against her based on her age. [45] ¶ 67; [43-1] at 71–78; [43-4] at 18–19. Rogers, another station manager, also believed that Sheets treated her differently, and ultimately terminated her, because on her age. [48] ¶¶ 69–70. Lisa Simane took over Sheets's role sometime in mid to late 2015. [45] ¶ 12.

Amtrak employees are required to comply with company policies. While Amtrak employees could utilize Amtrak's railroad business service (referred to as RRB) to ship work-related items, Amtrak's Baggage Policy prohibited employees from shipping personal belongings via RRB without paying. *Id.* ¶ 16. Instead, employees were required pay to have personal items shipped by a separate Amtrak

---

[6] Netzinger asserts that she was harassed daily by Sheets, but only points to this one comment. As discussed below, she has not alleged a harassment claim. And while this comment is taken into account as support for her age-discrimination claim, the unsupported, general allegation that Sheets subjected her to daily harassment does not create a factual dispute that must be viewed in Netzinger's favor.

5

service. *Id*. Netzinger was aware of this policy. *Id*. ¶ 18. Amtrak's ethical policy "requires all employees to observe the highest standards of business ethics. We must conduct the business and operations of Amtrak and our affairs in a manner that complies with applicable law and high moral and ethical standards and avoids any possible conflict of interest or appearance of a conflict of interest." *Id*. ¶ 17. And all Amtrak employees are specifically prohibited from engaging in theft or any other form of wrongful conversion of Amtrak property. *Id*.

In September 2015, Netzinger attempted to ship 392 pounds of goods in seven boxes from the Minneapolis–St. Paul station to the Chicago station using RRB. *Id*. ¶ 19. Two of the boxes shipped, but the other five were overweight and so did not. *Id*. When Netzinger realized that not all of her boxes had arrived in Chicago, she called the Minneapolis–St. Paul station to find out why. *Id*. She spoke with Don Anderson, a customer service representative, who was upset that Netzinger had tried to ship the boxes via RRB. *Id*. Anderson informed her that he would refer the matter to his supervisor, who then called Sheets. *Id*. ¶¶ 19–20. Sheets told the supervisor to work with James Brzezinski to obtain statements regarding the incident. *Id*. ¶ 20.[7] In his statement, Anderson said that Netzinger offered to pay

---

[7] Netzinger denies this fact, and others, based on her lack of knowledge. Personal knowledge is not necessary to controvert a fact, and Netzinger is obligated to come forward with evidence to contest Amtrak's facts. Facts that are merely denied without evidentiary support are undisputed for purposes of summary judgment. *See* LR 56.1. Netzinger does point out that Sheets's credibility is undermined by his guilty plea and conviction for conduct unrelated to Netzinger's employment. *See* [48] ¶ 75; *United States v. Sheets*, No. 17 CR 661 (N.D. Ill.). Credibility determinations should be left to the jury, not decided on a motion for summary judgment. *Anderson*, 477 U.S. at 255. But Netzinger's entitlement to favorable inferences does not forgive her obligation to point to evidence in order to dispute a fact asserted by Amtrak.

6

over the phone, saying that she had always offered to pay when shipping items RRB, and that he refused her payment. *Id.* ¶ 21. He also said that while he had been on duty Netzinger had never offered to pay, "going back at least four years." *Id.* Anderson noted that the boxes were of different commercial labels and that there was no package uniformity consistent with RRB shipments, leading him to believe the boxes were not RRB. *Id.* He also stated that later the same day, a former Amtrak employee came to pick up the boxes for Netzinger. *Id.* Netzinger, on the other hand, said that Anderson suggested to her that she pay for the shipment and she refused, saying she had previously used RRB and not paid and that these boxes were business-related and so properly sent through RRB. *Id.* ¶ 19; [43-1] at 230:14–233:10.

Brzezinski worked with an Amtrak employee relations representative to further investigate the incident. [45] ¶ 22. As part of the investigation Sheets and Simane interviewed Netzinger and asked her to prepare a written statement, which they sent back to the investigating employees. *Id.* ¶ 22. In her statement Netzinger stated that five of the boxes at issue contained books and National Geographic magazines she had planned to put in the Metropolitan Lounge for Amtrak customers. *Id.* Her mother had recently passed away, Netzinger noted, and she did not want to waste them. *Id.* The other two boxes contained candy, which Netzinger planned to give to Amtrak employees and which was cheaper in Minneapolis–St. Paul than in Chicago. *Id.* These two candy boxes were the ones that shipped successfully to Chicago (though Sheets never opened them to see what was inside).

7

*Id.*; [43-3] at 12; [48] ¶ 73. Netzinger also asserted that she had previously shipped six to eight boxes of books and magazines from Minneapolis to Chicago using RRB, [45] ¶ 26,[8] and that in the past she had shipped personal business clothes while attending work events. *Id.* ¶ 23. Two other employees—neither of whom was a station manager—shipped personal items via RRB when they were transferred to new positions at other Amtrak locations. *Id.* ¶¶ 29–31. After the investigation was completed, employee relations informed Sheets that Amtrak had decided to terminate Netzinger's employment. *Id.* ¶ 24. The decisionmakers did not consult Sheets about their conclusion. *Id.*[9] Amtrak terminated Netzinger on September 28, 2015. *Id.* ¶ 25.

**III. Analysis**

To the extent Netzinger, in her complaint, alleged a hostile-work-environment claim, or that being placed on a performance improvement plan or being paid less than other station managers constituted materially adverse actions giving rise to an age-discrimination claim, she abandoned those claims by failing to address them in her response to the motion for summary judgment. *See Laborers'*

---

[8] Amtrak disputes Netzinger's testimony that she had shipped books and magazines via RRB and placed them in the Metropolitan Lounge in the past, citing statements from employees who worked in the lounge and claimed there were never more than a few books or magazines in there at a time and that those came from passengers who left them behind. *See id.* ¶¶ 27–29. Amtrak also points out that Netzinger did not mention these shipments in the written statement she provided during the investigation, *see* [43-3] at 12–13, and argues that Netzinger's deposition testimony on this point differs from her affidavit. *See* [48] at 5. But the two are not inconsistent as to the general assertion that she had placed these items in the lounge in the past. Disputed facts must be viewed in the light most favorable to the nonmoving party, so here I take Netzinger at her word.

[9] Again, Netzinger's response that she lacks of knowledge does not refute the asserted fact, and so it is admitted.

8

*Int'l Union of N. America v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999). As a result, Netzinger is left with her claim that Amtrak terminated her because of her age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. Amtrak argues that no reasonable jury could find for Netzinger on her age-discrimination claim.

To prevail on a claim for employment discrimination, a plaintiff must present evidence that, as a whole, allows a reasonable factfinder to conclude that the plaintiff's protected characteristic caused the adverse employment action. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see also David v. Bd. of Trustees of Comm. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) (applying the same standard to an age-discrimination claim). The *McDonnell Douglas* burden-shifting framework is one "means of organizing, presenting, and assessing circumstantial evidence" in employment-discrimination cases. *David*, 846 F.3d at 224. But it is not the only way, and a court should also assess all evidence cumulatively to determine whether a reasonable factfinder could find that the plaintiff's protected characteristic caused the adverse action. *Id*.

A.  **McDonnell Douglas**

Under the *McDonnell Douglas* burden-shifting analysis, a plaintiff must first establish a prima facie case of discrimination by demonstrating that (1) she is a member of a protected class; (2) she was meeting the defendant's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated individuals outside of the

9

protected class. *Id*. at 225. If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to provide a legitimate justification for the adverse action. *Id*. If the defendant provides a nondiscriminatory justification, then the burden shifts back to the plaintiff to show that the defendant's justification is pretextual. *Id*.

Amtrak does not dispute that Netzinger is over the age of 40 and therefore a member of a protected class, nor does it dispute that she suffered an adverse employment action when she was terminated. Amtrak argues that Netzinger has failed to demonstrate that she was meeting its legitimate expectations (because she violated its RRB policy) and that she was treated less favorably than similarly situated individuals outside of the protected class. Viewing the facts in the light most favorable to Netzinger, she was a hardworking employee who received a positive performance evaluation. When she shipped work-related materials via RRB (as she was permitted to do under the policy), Amtrak wrongly concluded that she had violated its policy and terminated her based on that determination. Based on Netzinger's assertions, a reasonable factfinder could conclude that despite Amtrak's assertions to the contrary, she was meeting its legitimate expectations. Netzinger does not, however, point to any similarly situated employees who are under the age of 40 and who were treated more favorably. None of the other station managers were under 40, and Netzinger points to no other employees—station managers or otherwise—who shipped items for a similar reason and were not terminated. She does point to two employees who shipped personal items when they were

transferred to new positions with Amtrak in different locations, but these situations are sufficiently distinct and do not support the conclusion that Netzinger was treated differently because of her age, and not because of the nature of the underlying conduct. Indeed, Netzinger points out that she too was permitted to ship her personal items via RRB when she traveled on behalf of Amtrak.

Even assuming Netzinger established a prima facie showing of age discrimination, Amtrak has asserted an age-neutral justification for her termination—that it genuinely believed that she had violated its policies and that such a violation warranted termination. And Netzinger has failed to assert facts that would allow a jury to conclude that this rationale was pretext for age discrimination. Even taking Netzinger's assertion that she had shipped similar packages via RRB in the past, no one reported that conduct and so it does not support an inference that Amtrak did not view it as a violation of its policy.

And though Sheets made age-based comments—to Netzinger directly and in other situations—that could support the conclusion that his actions toward her were motivated by her age, Netzinger's consclusory denial fails to dispute the fact that Sheets was not consulted about the decision to terminate her employment. [45] ¶ 24. Sheets did play a role in the investigation of Netzinger's alleged wrongdoing, but he was not the one who initially reported the incident and did not have any input into the final determination. That Sheets instructed that an investigation take place, interviewed Netzinger, and told her to write up her version of the events does not support an inference that he had any input into the outcome of the

investigation. *See Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 528 (7th Cir. 2008) ("[D]erogatory remarks are relevant if they are made by someone who provided input into the adverse employment decision."). And nothing indicates that any of the decisionmakers were influenced by Sheets's animus or motivated by Netzinger's age—and Netzinger alleges Sheets, and no one else at Amtrak, discriminated against her because of her age. [45] ¶ 13.

Based on this evidence, Netzinger has failed to establish a prima facie case that would allow her to defeat summary judgment using the *McDonnell Douglas* framework. And even if she had established a prima facie case, she has failed to show that Amtrak's decision to terminate her was pretext for her age.

### B. Cumulative Review

In addition to the evidence discussed above, Netzinger also asserts that she was forced to work longer hours than other station managers and received equal or lesser pay, that she was placed on a performance improvement plan and did not get her choice of assignments, and that another employee, Rogers, believed she had been subjected to age-based discrimination in part because Amtrak had an incentive to hire younger employees so it could pay them lower salaries. This evidence, combined with Sheets's age-based comments and Amtrak's mistaken conclusion that Netzinger had violated its policy, is still insufficient to allow a reasonable factfinder to conclude that Amtrak terminated Netzinger because of her age.

12

Netzinger was paid more than some, and less than other, station managers but worked longer hours. But because all of the station managers working under Sheets were over the age of 40, it does not follow that this possibly unfair treatment can be linked to Netzinger's age. And Netzinger fails to refute Amtrak's assertions that she was paid more than one younger station manager and that two of the station managers who were paid more than her had previously worked in higher paying positions and retained those salaries when they became station managers. Netzinger also asserts that she was placed on a performance improvement plan, but so was the youngest station manager (though, she too, was over 40). These facts do not support an inference that Netzinger was treated differently based on her age and so do not support her allegation that she was terminated because of her age either. As discussed above, how Sheets treated Netzinger does not support her allegation because Sheets did not make the only adverse employment decision at issue. And there is no indication that the decisionmakers considered Netzinger's employment record or the fact that she had been placed on a performance improvement plan when deciding to terminate her.

Netzinger also points to Rogers's testimony that she believed she was terminated because of her age, and that Amtrak had an incentive to get rid of older employees who were paid more given their union status. Though Rogers and Netzinger were both station managers who worked under Sheets, whether Rogers was terminated because of her age does not make it more or less likely that Netzinger was—there is no indication that the same decisionmakers were involved

or that anything else would bridge these two allegations. And Rogers's contention that older employees were paid too much contradicts Netzinger's assertion that she was paid less than younger employees.[10] Viewing the evidence as a whole, no reasonable factfinder could conclude that Amtrak terminated Netzinger because of her age. Defendant's motion for summary judgment is granted.

## IV. Conclusion

Amtrak's motion for summary judgment, [40], is granted. Enter judgment and terminate civil case.

ENTER:

/s/ Manish S. Shah
Manish S. Shah
United States District Judge

Date: June 19, 2018

---

[10] Netzinger's assertion in her response that Amtrak filled Rogers's position with an employee under 40 is unsupported by the record, and Rogers testified that her position was filled by Slemons, who was over 40. [45-3] at 203:4–10.